IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

SINGLE ACTION BET TECH LLC

                    Plaintiff,

        v.

PENN ENTERTAINMENT, INC. d/b/a
HOLLYWOOD CASINO;
PENN INTERACTIVE VENTURES, LLC d/b/a
HOLLYWOOD CASINO,

                    Defendants.

---

Case No. 2:25-cv-18551

**Jury Trial Demanded**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Single Action Bet Tech LLC (hereinafter, "Single Action" or "Plaintiff") files this Complaint against Defendants PENN Entertainment, Inc. and PENN Interactive Ventures, LLC (both d/b/a Hollywood Casino) (hereinafter, referred to collectively and individually as "Hollywood Casino" or "PENN" or "Defendants") for infringement of United States Patent Nos. 9,704,345 (Exhibit A) and 11,587,397 (Exhibit B) (the "Patents-in-Suit"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

## THE PARTIES

2.      Single Action Bet Tech LLC is a limited liability company organized under the laws of Delaware and has a principal of business at 8000 Towers Crescent Dr., Suite 1700, Tysons, VA 22182.

3.      On information and belief, Defendant PENN Entertainment, Inc. d/b/a Hollywood Casino, is a Pennsylvania corporation with a company number of 724866. Defendant PENN

Entertainment, Inc. d/b/a Hollywood Casino has a principal place of business located at 825 Berkshire Blvd., Wyomissing, PA 19610.

4.      On information and belief, Defendant PENN Entertainment, Inc. d/b/a Hollywood Casino operates, has an ownership interest in, and/or collects a portion of gambling profits from, the bets made on the branded Hollywood Casino digital gaming casino and sports book referenced at the web locations mentioned herein.

5.      On information and belief, Defendant PENN Interactive Ventures, LLC d/b/a Hollywood Casino, is a Delaware limited liability corporation with a company number of 5700574. Defendant PENN Interactive, LLC d/b/a Hollywood Casino is a wholly-owned subsidiary of Defendant PENN Entertainment and has a principal place of business located at 825 Berkshire Blvd., Wyomissing, PA 19610.

6.      On information and belief, Defendant PENN Interactive Ventures, LLC d/b/a Hollywood Casino maintains offices in this district located at 121 Woodcrest Road, Cherry Hill, NJ 08003.

7.      On information and belief, Defendant PENN Interactive Ventures, LLC d/b/a Hollywood Casino may be served with process through their registered agent, The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, their executives located at the aforementioned principal place of business, or anywhere it may be found.

8.      On information and belief, Hollywood Casino is the trade name of a digital gaming casino and sports book originating from Pennsylvania, which is now licensed and regulated by the United States and various applicable state laws and regulations, including within the State of New Jersey and within this district, for which the aforementioned entities, Defendants PENN Entertainment, Inc. and PENN Interactive d/b/a Hollywood Casino operates, owns, and/or profits from.

9.      Hollywood Casino conducts business throughout the United States, including within the State of New Jersey and this district.[1]

10.     On information and belief, Defendants sell and offer to sell products and services throughout the State of New Jersey, including in this judicial district, as well as throughout the United States, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States.

11.     On information and belief, Hollywood Casino uses and provides infringing products and services globally and provides "real money slots and table games straight from the casino floor to your devices" and "authentic play and excellent experiences."[2]

12.     On information and belief, Hollywood Casino made, used, offered to sell, offered to sell access to, sold, and/or sold access to products and services, or makes, uses, offers to sell, offers to sell access to, and/or sells access to products and services, including the following specifically accused products and services: (1) products and services associated with Hollywood Casino casino gaming, sports betting and/or wagering, and live event betting and/or wagering; (2) products and services associated with and implementing Hollywood Casino features, including the Hollywood Casino Mobile App; (3) website services accessible through https://hollywoodcasino.com/?utm_source=Hollywood+Casino and  https://espnbet.com/; (4) website products and services hosted through https://hollywoodcasino.com/?utm_source=Hollywood+Casino and https://espnbet.com/; (5) current or legacy products or services, which use, or have used one or

---

[1] *See* https://investors.pennentertainment.com/static-files/32be216d-4daa-4250-8e3f-35934757e2c6, at 7 (stating PENN Interactive operates a digital "iCasino" in New Jersey, Michigan, Pennsylvania, and West Virginia).

[2] *See* https://www.pennentertainment.com/corp/our-brands/hollywoodcasino (last accessed December 1, 2025).

more of the foregoing products and services as a component product or component service; (6) combinations of products and/or services comprising, in whole or in part, two or more of the foregoing products and services; and, (7) all other current or legacy products and services imported, made, used, sold, or offered for sale by Hollywood Casino that operate, or have operated in a substantially similar manner as the above-listed products and services. (As used herein, one or more of the foregoing products and services are individually and collectively referred to as the accused "Hollywood Casino Products and Services"). On information and belief, the Hollywood Casino Products and Services infringe at least one claim of each of the patents-in-suit.

13.     On information and belief, Hollywood Casino, as well as the hardware and software components comprising the Hollywood Casino Products and Services and/or that enable the Hollywood Casino Products and Services to operate, including but not limited to servers, server hardware, server software, website software, webservers, client-side software, mobile software, mobile app software, and browser executable software (individually and collectively referred to herein as the accused "Hollywood Casino System"), infringe (literally and/or under the doctrine of equivalents) at least one claim of each of the patents-in-suit.

## JURISDICTION AND VENUE

14.     This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* Accordingly, this Court has subject matter jurisdiction under at least 28 U.S.C. §§ 1331 and 1338(a).

15.     This Court has general and specific personal jurisdiction over Defendants collectively (*i.e.*, Hollywood Casino) because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to the accused Hollywood Casino Products and Services and Hollywood Casino System provided to individuals and businesses in this district.

4

16.     Hollywood Casino has committed and continues to commit acts of infringement in the State of New Jersey and in this district and, thereby, giving rise to this action and establishing minimum contacts with this forum such that the exercise of jurisdiction over Hollywood Casino would not offend traditional notion of fair play and substantial justice. In addition, this Court has personal jurisdiction over Hollywood Casino at least for the following reasons: (1) Hollywood Casino has purposefully availed itself of the privileges of conducting business in the State of New Jersey; (2) Hollywood Casino has sought privileges, protections and benefit from the laws of the State of New Jersey; (3) Hollywood Casino regularly conducts business within the State of New Jersey and within this district, and Plaintiff's cause of action arises directly from Defendants business contacts and other activities in the State of New Jersey and in this district, including deriving substantial revenue from the infringing Hollywood Casino Products and Services and Hollywood Casino System in the State of New Jersey and this district.

17.     On information and belief, Hollywood Casino, on its own and/or via its subsidiaries, divisions, partners, affiliates, and parent maintain a commercial presence in the United States, including in State of New Jersey and in this judicial district, via at least (1) Hollywood Casino's online presence[3] and web services that provides[4] the accused Hollywood Casino Products and Services and Hollywood Casino System, such as digital and/or mobile casino gaming and sports betting products; and, (2) consumers and clients of Hollywood Casino who utilize Hollywood Casino Products and Services and Hollywood Casino System, such as digital and/or mobile casino gaming

---

[3] *See e.g.*, https://investors.pennentertainment.com/static-files/32be216d-4daa-4250-8e3f-35934757e2c6, at 7 (stating PENN Interactive operates a digital "iCasino" in New Jersey, Michigan, Pennsylvania, and West Virginia); *see also* https://www.pennentertainment.com/corp/our-brands/hollywoodcasino (last accessed Nov. 13, 2024).

[4] *See e.g.*, https://www.pennentertainment.com/corp/our-brands/hollywoodcasino; *see also* https://espnbet.com/.

and sports betting products. Hollywood Casino actively opens, solicits, invites, advertises, and/or promotes the accused Hollywood Casino Products and Services and accused Hollywood Casino System to residents, citizens, and customers of the United States, State of New Jersey, and this judicial district; or has opened, solicited, invited, advertised, and/or promoted the accused Hollywood Casino Products and Services and accused Hollywood Casino System to residents, citizens, and customers of the United States, State of New Jersey, and this judicial district.

18.    This Court has personal jurisdiction over Hollywood Casino, at least, because it committed acts of infringement in this judicial district in violation of 35 U.S.C. §§ 271(a) and/or (b). Specifically, on information and belief, Hollywood Casino has made, used, offered to sell access to, and/or sold access to the accused Hollywood Casino Products and Services and Services in the District of New Jersey; has made, used, offered to sell access to, and/or sold access to the accused Hollywood Casino System in the District of New Jersey; and, has induced the use by it is customers of the accused Hollywood Casino Products and Services and accused Hollywood Casino System in the District of New Jersey.

19.    On information and belief, Hollywood Casino is subject to the Court's jurisdiction because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in the District of New Jersey, and/or derives substantial revenue from the use, sale, and services, including but not limited to the accused Hollywood Casino Products and Services and accused Hollywood Casino System provided to individuals and businesses in this judicial district.

20.    On information and belief, Hollywood Casino has supported, marketed, made, distributed, offered to sell, and/or sold; or, supports, markets, makes, distributes, offers to sell, and/or sells, the accused Hollywood Casino Products and Services and Hollywood Casino System to consumers throughout the United States, the State of New Jersey, and residents of this judicial district through various means.

6

21.     On information and belief, Hollywood Casino derives substantial revenue within the State of New Jersey from the offer of infringing products and services, including but not limited to the Hollywood Casino System. On information and belief, Hollywood Casino users who reside in the State of New Jersey and this district regularly use the accused Hollywood Casino System and Hollywood Casino Products and Services while they are present in the State of New Jersey and this district..

22.     On information and belief, Hollywood Casino, on its own and/or via its subsidiaries, divisions, partners, affiliates, and parent, infringe (either directly and/or indirectly) one or more of the claims of the patents-in-suit.

23.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Hollywood Casino has committed acts of infringement in this judicial district, and has regular and established places of business in this judicial district.

## PENN AND HOLLYWOOD CASINO'S PRIOR KNOWLEDGE OF THE PATENTS-IN-SUIT

24.     On or about December 4, 2024, in its role as counsel for Single Action Bet Tech LLC ("Single Action"), Shalu Maheshwari of Daignault Iyer LLP sent a letter (the "December 2024 Letter") via email and FedEx to Mr. Chris Rogers, EVP, Chief Strategy and Legal Officer at PENN Entertainment Inc. and PENN Interactive Ventures, LLC. *See* Exhibit C. The December 2024 Letter was sent to PENN for the express purpose of acquainting it with Single Action's patent portfolio, including but not limited to the Patents-in-Suit, prior to any enforcement action relating to its past or future use, related to its digital casino operations. The December 2024 Letter invited Defendants to participate in discussions regarding a license to allow its continued use of Single Action's patented technologies.

25.     On information and belief, on or about December 4, 2024, Mr. Rogers received a copy of the December 2024 Letter via email and FedEx delivery on behalf of PENN.

26.     On December 16, 2024, Single Action, through undersigned counsel, received responsive correspondence via email from Steve Coyle of Cantor Colbourn LLP, counsel for Defendants. The December 16, 2024 email confirmed receipt of the December 2024 Letter and acknowledged Defendants took intellectual property rights seriously, and Defendants would evaluate the contents of the December 2024 Letter.

27.     On January 7, 2025 counsel for Single Action and counsel for PENN participated in an initial meeting to discuss the December 2024 Letter, along with opportunities for Defendants to license Single Action's patented technologies.

28.     Throughout February to April 2025, the parties had varying discussions and correspondences regarding the December 2024 Letter and opportunities for Defendants to license Single Action's patented technologies, none of which resulted in meaningful engagement towards an agreement.

29.     On July 17, 2025, counsel for Single Action sent an electronic mail correspondence to Mr. Coyle, counsel for Defendants, seeking again to engage in meaningful licensing discussions and informing Defendants that Single Action has completed licenses for its patented technologies with other parties.

30.     The parties attempted to discuss licensing again during a September 22, 2025 virtual meeting, but were unsuccessful.

31.     As of the date of filing of the instant Complaint, the parties have not engaged in meaningful licensing discussion since the September 22, 2025 meeting.

## THE ASSERTED PATENTS

### United States Patent No. 9,704,345

32.    On July 11, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,704,345 ("the '345 patent") entitled "Single Action Betting System and Method" to inventor Wendell Brown.

33.    The '345 patent is presumed valid under 35 U.S.C. § 282. A true and correct copy of the '345 patent is enclosed hereto.

34.    Single Action Bet Tech LLC owns all rights, title, and interest in the '345 patent.

35.    Single Action Bet Tech has not granted Defendants an approval, an authorization, or a license to rights under the '345 patent.

36.    The '345 Patent is directed to a computer-implemented solution for more efficient bet placement on computing devices, particularly targeting the challenges of mobile devices. The patent states that it is "particularly applicable to single action betting system and method implemented for mobile devices" while also recognizing use with "various other computing devices" capable of running the same single-action betting interface ('345 Patent, 1:45-53). This focus on mobile computing reflects the technological context in which the invention operates.

37.    The '345 Patent identifies a usability problem in prior art betting games: players were required to perform multiple separate user actions to place a bet and start a game, which was especially cumbersome on small touchscreen devices. The specification explains that typical mobile betting games "require the user to use multiple clicks (or touches) to: a) Select a bet amount; b) place their bet; and/or c) begin the game. These multiple clicks may cause the user to become uninterested or unwilling to place the bet, especially on a mobile device in which it is more difficult to click/touch on the proper portion of the user interface screen" ('345 Patent, 1:18-25). In other words, the need for numerous precise touches on a mobile interface could deter users from completing bets.

38.     To address this issue, the '345 Patent discloses a *single action betting* system that consolidates the multi-step betting process into a single user interaction. The patent teaches that "the single action system and method enables a game player to combine the steps, such as selecting a bet amount, placing a bet and/or beginning the game, into a single action. The single action system and method makes it easier and quicker for the user to place a bet and thus encourages quick/easier/additional betting" ('345 Patent, 1:54-59). By collapsing what used to be multiple separate operations into one action, the disclosed invention improves the speed and ease of real-money betting on computing devices, particularly on smartphones and tablets.

39.     Claim 1 exemplifies this improvement with concrete steps carried out by a client device and a backend server in concert. On the client side, Claim 1 recites that a client system displays information identifying a betting opportunity for the user and that, in response to *"only a single action"* by the user, the device sends *"a request to place the bet along with an identifier of a player of the game to a server system"* ('345 Patent, 6:25-26). In short, a single user action (for example, a one-touch input on a mobile app) triggers the client device to transmit a bet-placement request containing the player's identifier to the backend betting system.

40.     Upon this one-action request, the backend system automatically performs the remaining necessary betting steps. Claim 1 specifies that the server-side betting component *"receiv[es] the request by a betting component of a backend system"* and then *"retriev[es] ... additional information previously stored for the player identified by the identifier in the received request"* ('345 Patent, 6:27-31). In other words, when the one-touch bet request arrives, the backend looks up the player's pre-stored credentials and account data (using the player's identifier sent from the client). The backend system then uses that data for *"validating the credentials of the player and verifying that the player has sufficient funds"* for the wager ('345 Patent, 6:32-33). Because the player's identity and funding

information are already on file and tied to the identifier the single-action architecture thus eliminates the prior requirement for the user to manually input credentials or payment details each time.

41.     If the player's authentication and fund checks are successful, Claim 1 recites that the betting system proceeds to *"generat[e] … a bet based on the request and plac[e] the bet to commence the game"* ('345 Patent, 6:35-36). The wager is thereby executed and the game begins automatically. The claim concludes with a result clause confirming that through this streamlined series of coordinated client/server interactions, *"the bet is placed and the game play is initiated without using multiple actions by the player"* ('345 Patent, 6:39-40).

42.     In sum, Claim 1 ties together specific technical components – a client computing device, a backend betting component, stored player data, and a network link between them – to achieve a one-action bet placement solution that was not possible in a conventional multi-step mobile betting paradigm.

## United States Patent No. 11,587,397

43.     On February 21, 2023, the USPTO duly and legally issued United States Patent No. 11,587,397 ("the '397 patent") entitled "Single Action Betting System and Method" to inventor Wendell Brown.

44.     The '397 patent is presumed valid under 35 U.S.C. § 282. A true and correct copy of the '397 patent is enclosed hereto.

45.     Single Action Bet Tech owns all rights, title, and interest in the '397 patent.

46.     Single Action Bet Tech has not granted Defendants an approval, an authorization, or a license to the rights under the '397 patent.

47.     The '397 patent is a continuation of the '345 patent. Claim 9 of the '397 Patent addresses a specific technical problem in computer-implemented betting systems. Prior mobile betting games required users to perform multiple separate actions to place a single bet, which hindered the

11

betting process. As the patent explains, "Typical mobile games that accept real-money betting today… require the user to use multiple clicks (or touches) to: a) Select a bet amount b) place their bet; and/or c) begin the game. These multiple clicks may cause the user to become uninterested or unwilling to place the bet" ('397 Patent, 1:26-31). This conventional multi-step workflow, especially on mobile devices, often caused users to abandon bets before completion. (*Id.* at 1:31-38).

48.    The '397 Patent provides a specific solution that streamlines the betting process through a single user action. The patented *"single action system and method enables a game player to combine the steps, such as selecting a bet amount, placing a bet and/or beginning the game, into a single action"* ('397 Patent, 1:62-64). By consolidating what used to be multiple interactions into one, the system *"makes it easier and quicker for the user to place a bet and thus encourages quick/easier/additional betting"* (*Id.* at 1:65-67). In other words, the invention improves the user interface and operation of the computerized betting system by reducing the number of user actions required to initiate game play.

49.    Claim 9 recites this improved method with concrete technical steps executed by a client-server system. In particular, a single action by the player at a client device triggers the server to carry out a series of coordinated operations. For example, upon that one action, the server receives a bet placement request with the player's identifier and proceeds to "validat[e] … at least one credential of the player," "authoriz[e] … the client system," and "verif[y] … that the client system is located in a jurisdiction that permits the bet" ('397 Patent, 7:18-23). After these checks are satisfied, the server "generat[es] … the bet, wherein … the bet is placed and game play is initiated" in response to the single user input ('397 Patent, 7:26-28). Thus, Claim 9 requires a specific sequence of technical steps - triggered by one user action - by which the system verifies the necessary conditions and automatically initiates the game and bet without further user intervention.

50.     The patent's specification describes a specialized system architecture that enables this single-action functionality. A plurality of client devices (e.g., smartphones or computers) connect to a back-end server system that is configured with dedicated components and data stores to handle the one-touch betting process. For example, the server-side stores include *"a player credential store 110"* for authenticating users and *"a jurisdiction rules store 112"* to ensure each user *"is in a jurisdiction that permits gambling"* ('397 Patent, 3:9-13). The back-end betting engine (bet component 108) uses these stores, along with device identifiers and other data, to enforce authorization and regulatory rules as part of the single-action bet placement.

51.     The claimed method performs automated credential checking and location verification using these computer components, rather than relying on any mental process or manual steps. The server system verifies the player's geographic location in real-time by utilizing the client device's hardware and network data. Specifically, the patent discloses that the betting system *"determines, based on the location of the player/computing device and the jurisdiction rules store 112, that the game can be legally played at the location (230)...The location of the player/computing device may be performed based on GPS data or [on] cellular tower data, each of which may be used to verify the geo-location of the player/computing device"* ('397 Patent, 3:66-4:6). Likewise, the system automatically checks the player's credentials against the stored information to *"verify that the particular user of the computing device has valid credentials"* ('397 Patent, 3:52-53). These verification steps occur instantaneously in response to the user's single action and would be impossible for a human to perform mentally or with pen and paper.

52.     Accordingly, Claim 9 is directed to a concrete improvement in computerized betting technology, not an abstract idea or mere result. The claimed single-action technique eliminates the conventional multi-step input burden by using a one-click (or one-touch) trigger to initiate a structured sequence of technical operations executed by networked computer components. This unified process

*"makes it easier and quicker"* for users to place bets ('397 Patent, 1:65-66) and was not practiced in prior betting systems that required multiple separate user actions ('397 Patent, 1:34-38). By requiring specific hardware (a client device with a display and a server system with specialized processors and data stores) and defined technical steps (credential authentication, device authorization, GPS-based location verification, etc.), Claim 9 cannot be performed in the human mind and is not a generic business method. It recites a specific patent-eligible technological solution that improves the functioning of the computer-based betting system itself.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 9,704,345

53.     Single Action Bet Tech repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

54.     On information and belief, Hollywood Casino violated 35 U.S. C. § 271(a) and (b) with respect to one or more claims of the '345 patent.

55.     On information and belief, Hollywood Casino (or those acting on its behalf) (i) makes, uses, sells, imports and/or offers to sell the Hollywood Casino Products and Services; (ii) makes, uses sells, sells access to, imports, offers to sell and/or offered to sell access to the Hollywood Casino System, including the Hollywood Casino Mobile App; and, (iii) induced its customers to use the Hollywood Casino Products and Services and the Hollywood Casino System, including the Hollywood Casino Mobile App, in the United States that infringed (literally and/or under the doctrine of equivalents) at least claim 1 of '345 patent.

56.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g., the Hollywood Casino Mobile App provides game play which enables players to initiate wagering and gameplay under control of a client system).



*See* https://investors.pennentertainment.com/news-releases/news-release-details/penn-entertainment-launches-its-new-hollywood-casino-app

57.    On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. the Hollywood Casino Mobile App under control of a client system) which displays various casino games, sports lines, or miscellaneous live events and presents information identifying a betting opportunity for user. For example, the client interface on the Hollywood Casino App presents selectable wagering options (bet amounts per spin) before gameplay begins, demonstrates that the client system controls the display of information identifying a betting opportunity for the user.



*See* Hollywood Casino Mobile App

58.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) where in response to only a single action being performed, sending a request to place the bet along with an identifier of a player of the game to a server system. For example, on the Hollywood Casino Mobile App, the player presses a single button labeled for spinning or starting a round, immediately followed by the button greying-out to indicate the bet has been placed. The balance will be updated on the server system, confirmed by the screenshot of the player's balance after the game is exited. This sequence shows that one user action sends the bet request from the client to the server.





*See* Hollywood Casino Mobile App

59.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) including retrieving, by the betting component, additional information previously stored for the player identified by the identifier in the received request. For example, backend system receives the bet placement request communicated from the client system (the Hollywood Casino Mobile App). The subsequent balance displays the amount of money won or lost, and after the single-action bet, the displayed balance changes automatically to reflect the win/loss outcome. The balance update, shown on the account's homepage, confirms that the backend system received and processed the bet request and returned results to the client.

18





*See* Hollywood Casino Mobile App

60.     On information and belief, one or more components of the Hollywood Casino System employ and provide a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) comprising retrieving, by the betting component, additional information previously stored for the player identified by the identifier in the received request. For example, the Hollywood Casino Mobile App backend system retrieves previously stored player account data associated with the identifier used in the received request.

**Categories of Personal Information Collected and Processed**
To provide you with all of the requested Services, we collect and process the following categories of personal information:

- **Identifiers**, such as first and last name, home or other physical address, which includes the name of a street, the name of a city or town, state of residency, and zip code, date of birth, gender identity, age, photograph, job status, employment information, unique personal identifiers or other similar identifiers.

*See* https://www.pennentertainment.com/privacy-policy

61.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) comprising validating the credentials of the player and verifying that the player has sufficient funds based on the additional information retrieved for the player. For example, the Hollywood Casion Mobile App validates stored credentials and verifies sufficient funds when a deposit or bet action is performed, as evidenced by the loading screen during deposit initiation and visible balance tracking. The loading screen shown during deposit confirms that player credentials are validated before funds are accepted, and the in-game "insufficient balance" message confirms the system verifies fund sufficiency prior to allowing bets. Together these demonstrate validation and balance verification functions.



*See* Hollywood Casino Mobile App

     62.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) comprising generating, by the betting component, a bet based on the request and placing the bet to commence the game if the player credentials are validated and the player has sufficient funds. For example, the Hollywood Casino Mobile App backend generates and places the bet based on the single-action request, automatically initiating game play once validation and balance verification are complete. The same "Spin" button screenshots show that once credentials and balance conditions are met, a single tap causes the backend to generate the bet and initiate game play. The button greying-

out visually confirms that the bet is placed and the round begins automatically.



*See* Hollywood Casino Mobile App

63.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g. through the Hollywood Casino Mobile App) comprising whereby the bet is placed and the game play is initiated without using multiple actions by the player. For example, the Hollywood Casino Mobile App completes bet placement and initiates game play upon a single tap or click, without requiring additional confirmation or multi-step actions. The single-tap bet process shown in the screenshots demonstrates that no further confirmation or multi-step input is required. The player's single action both places the bet and begins gameplay.



*See* Hollywood Casino Mobile App

64.    On information and belief, Hollywood Casino directly infringes at least claim 1 of the '345 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Hollywood Casino Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Hollywood Casino System.

65.    On information and belief, at least since its receipt of the December 2024 Letter on or about December 4, 2024, and its knowledge of the '345 patent, Hollywood Casino knowingly encouraged customers to directly infringe one or more claims of the '345 patent, including but not limited to claim 1, through Hollywood Casino's actions that include, without limitation, specifically instructing and actively encouraging customers to use the Hollywood Casino Products and Services and Hollywood Casino System, including the Hollywood Casino Mobile App, through its advertisements, promotional materials and user instructions.

66.    On information and belief, Hollywood Casino's advertisements, promotional materials and user instructions, instruct and actively encourage customers of Hollywood Casino to practice each and every element of, at least, the methods of claim 1 of the '345 patent.

67.    On information and belief, at least since its 2024 receipt of the December 2024 Letter, Hollywood Casino induced customers to take constituted direct patent infringement and Hollywood Casino's encouraging acts resulted in direct infringement by its customers.

68.    On information and belief, Hollywood Casino instructs customers to use the Hollywood Casino Products and Services and Hollywood Casino System, including the Hollywood Casino Mobile App, without limitation, through Hollywood Casino's website, which provides access to, and support for using Hollywood Casino Products and Services and Hollywood Casino System, including the Hollywood Casino Mobile App.

69.    On information and belief, Hollywood Casino's customers directly infringe at least claim 1 of the '345 patent through their use of the Hollywood Casino Products and Services and the Hollywood Casino System, including the Hollywood Casino Mobile App.

70.    On information and belief, Hollywood Casino is in violation of 35 U.S.C. § 271(b) and has indirectly infringed, and continues to infringe, at least claim 1 of the '345 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Hollywood Casino's customers) and possessing specific intent to encourage infringement by Hollywood Casino's customers. The Hollywood Casino Products and Services and Hollywood Casino System, including the Hollywood Casino Mobile App, are and were specifically configured to function in accordance with the '345 patent claims, are material parts of the invention, and do not have substantial non-infringing uses.

71.    Single Action has been damaged by the direct and/or indirect infringement of Hollywood Casino and has suffered, and continues to suffer, irreparable harm and damages as a result of this infringement.

## Count II – Infringement of United States Patent No. 11,587,397

72.    Single Action Bet Tech repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

73.    On information and belief, Hollywood Casino violated 35 U.S.C. § 271(a) and (b) with respect to one or more claims of the '397 patent.

74.    On information and belief, Hollywood Casino (or those acting on its behalf) (i) makes, uses, sells, imports and/or offers to sell the Hollywood Casino Products and Services; (ii) makes, uses sells, sells access to, imports, offers to sell and/or offered to sell access to the Hollywood Casino System, including the Hollywood Casino Mobile App; and, (iii) induced its customers to use the Hollywood Casino Products and Services and the Hollywood Casino System, including the Hollywood Casino Mobile App, in the United States that infringed (literally and/or under the doctrine of equivalents) at least claim 9 of '397 patent.

75.    On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game (e.g., the Hollywood Casino Mobile App provides game play which enables players to initiate wagering and gameplay under control of a client system).



*See* https://investors.pennentertainment.com/news-releases/news-release-details/penn-entertainment-launches-its-new-hollywood-casino-app

76.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game comprising causing a client system to display information identifying a betting opportunity for a player. For example, the client device to display betting opportunities, allowing the user to select the amount of betting rounds, and limits on a single betting round. The below screenshots of the Hollywood Casino Mobile App show the client interface presenting wagering settings: total spins, loss limit, and "stop on win above" thresholds, followed by a "Start" button once the options are set, demonstrating that the client system displays information identifying a betting opportunity prior to play.



*See* Hollywood Casino Mobile App

77. On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which is responsive to a single action being performed at the client system, receiving, at a server system, a request to place the bet and an identifier corresponding to the player. For example, the Hollywood Casino Mobile App backend receives, responsive to a single action, a request containing player identification information, consistent with identifiers described in the privacy policy. The privacy-policy screenshot confirms the backend receives identifiers such as account ID and username for each registered user. The gameplay screenshot shows a single tap of the "Start" button immediately initiating wagering. Together they show that the single action sends a bet request containing the player's identifier to the server.

27

**Categories of Personal Information Collected and Processed**

To provide you with all of the requested Services, we collect and process the following categories of personal information:

> • **Identifiers**, such as first and last name, home or other physical address, which includes the name of a street, the name of a city or town, state of residency, and zip code, date of birth, gender identity, age, photograph, job status, employment information, unique personal identifiers or other similar identifiers.

*See* https://www.pennentertainment.com/privacy-policy



*See* Hollywood Casino Mobile App

78.    On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which validates, based on the identifier and the single action, at least one credential of the player. For example, the Hollywood Casino Mobile App validates at least one player credential, such as the identifier or login data collected and verified by the backend. The privacy-policy language establishes that collected identifiers are used to

28

authenticate users and maintain accounts. This shows the system validates at least one credential of the player, such as the stored login or account ID, before authorizing wagering.

> **Categories of Personal Information Collected and Processed**
> To provide you with all of the requested Services, we collect and process the following categories of personal information:
>
> • **Identifiers**, such as first and last name, home or other physical address, which includes the name of a street, the name of a city or town, state of residency, and zip code, date of birth, gender identity, age, photograph, job status, employment information, unique personal identifiers or other similar identifiers.

*See* https://www.pennentertainment.com/privacy-policy

> **6. REGISTRATION AND OPENING AN ACCOUNT**
>
> (a) In registering for the Service, you agree to: (i) provide true, accurate, current and complete information about yourself as prompted by the Service's registration forms; and (ii) maintain and promptly update your information to keep it true, accurate, current and complete. If you provide any information that is untrue, inaccurate, not current or incomplete, or PSI reasonably suspects that you have done so, PSI may refuse to register, suspend or terminate your Account at its sole discretion.
>
> (b) In order to register a player account for the Service (an "**Account**"), you hereby agree, represent and warrant that:
>
> (i) You are at least the legal gambling age in the jurisdiction in which you reside, as listed in subsection (e) below. It is an offense for anyone under the legal gambling age to open an Account or to gamble within the Service. PSI reserves the right to request proof of age documentation from any applicant or customer at any time and to void any wagers with minors;
>
> (ii) You agree to provide true and accurate registration information when opening your Account, including (depending on the Permitted Jurisdiction for which you are creating an Account), without limitation, your correct date of birth, the last four digits of your social security number, your current address, email address, personal telephone number, occupation and such other information as PSI may request, including a unique username and password, and verify whether you would like to implement strong authentication for your Account. You further agree to inform PSI of any changes in such details;
>
> (iii) You register and use only one (1) account using your own legal name;

> **9. DEPOSIT AND WITHDRAWALS**
>
> (a) Deposits. To wager on sporting events or icasino games on the Service, you need to deposit funds in your Account. All funds in Accounts are held in a separate account held in the name of PSI, the applicable licensed gaming operator or other party authorized by the relevant Gaming Authority(ies) for each Permitted Jurisdiction. See https://hollywoodcasino.com/legal/state-terms for more details.

> (f) <u>Eligible Balance</u>. In order to facilitate the provision of the Services to you in the Permitted Jurisdictions, PSI allows you to direct PSI to make your Eligible Balance (as defined below) available to you for wagering in each Permitted Jurisdiction in which you have an Account. As you travel into each Permitted Jurisdiction, you must consent to PSI making your Eligible Balance available in your Account for the Permitted Jurisdiction in which you are physically located while you use the Services. Each Permitted Jurisdiction may have its own criteria in determining whether certain funds are permitted to be used for wagering, which shall be the determination of existing funds that will be made available to you in each Permitted Jurisdiction (the "**Eligible Balance**"). For example, if you have an Account in a Permitted Jurisdiction which permits credit card deposits and subsequently travel to another Permitted Jurisdiction which prohibits credit card deposits, your Eligible Balance for wagering will not include funds that are associated with credit card deposits. You hereby acknowledge and agree that certain Permitted Jurisdiction may restrict the availability of certain portions of the funds in your Account for wagering, and in such instances, such portions of funds in your Account remains on your Account and may be withdrawn from your Account, but will not be an Eligible Balance for wagering within that Permitted Jurisdiction. Funds, as used in this section, shall mean cash and cash equivalent, including without limitation, bonus bets, bonus spins, eligible cashback, and other credits, available to be used for wagering purposes within the Services.

> **10. PLACING WAGERS**
>
> (a) Customers can only wager up to the amount of the Eligible Balance or the limit as set out in the Betting Rules, whichever is the lesser. The minimum and maximum wager per selection is determined exclusively by PSI and is stated in the App.

*See e.g.*, https://hollywoodcasino.zendesk.com/hc/en-us/articles/30805463401229-Terms-of-Use.

79.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which authorizes, based on the single action, the client system. For example, the Hollywood Casino Mobile App authorizes the client device based on the single tap that initiates the bet, allowing that specific session to communicate wagering data with the backend. The authorization occurs implicitly when the app accepts the single action to proceed with gameplay. Once the player performs the single tap, the balance updates automatically to reflect the wager result. The balance change demonstrates that the app has authorized that specific client session to communicate the bet data with the backend, satisfying the authorization requirement.



*See* Hollywood Casino Mobile App

80.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which verifies, based on the single action and a location of the client system, that the client system is located in a jurisdiction that permits the bet. For example, the Hollywood Casino Mobile App verifies the location of the client system using geolocation data collected at app startup, where users are prompted to enable location services prior to gameplay. The screenshot shows the Hollywood Casino Mobile App requires location services to be enabled before gameplay begins, confirms that, when the single-action wager is performed, the client's verified location is already linked to the authorized session.

31



*See* Hollywood Casino Mobile App

81.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which, based on the request, the validated at least one credential, the authorized client system, and the verified location of the client system, generating, by the server system, the bet, wherein, responsive to the single action being performed, is placed and game play is initiated. For example, the Hollywood Casino Mobile App backend generates the bet based on the single-action request, validated credentials, and verified location, initiating game play automatically. The screenshots show that once the "Start" button is pressed, the bet immediately begins, and the button becomes greyed out until the round ends. Combined with the credential validation and location verification, this shows the backend generates the bet and initiates gameplay in direct response to the single action.



*See* Hollywood Casino Mobile App



*See* Hollywood Casino Mobile App

82.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which, generates, after the game play is completed, an outcome that is at least one of: (i) a win of the game play and funds associated with the bet transferred to the player, and (ii) a loss of the game play and the funds associated with the bet. For example, the Hollywood Casino Mobile App, upon completion of gameplay, generates an outcome reflecting a win or loss, updating the player's account balance accordingly. The visible balance update (reduction or increase) shown after each round evidences that the backend generates a win/loss outcome and adjusts the user's account balance accordingly.



*See* Hollywood Casino Mobile App

83.     On information and belief, one or more components of the Hollywood Casino System employs and provides a method for placing a bet for a game which, displays, on the client system, a re-bet option to the player that confirms the re-bet of the player and verifies that the player has adequate funds. For example, the Hollywood Casino Mobile App displays a "Restart Autoplay" or equivalent re-bet option after autoplay completion, and the user's balance is updated and visibly decreases when re-betting, confirming adequate funds. The screenshot shows the app displaying a "Restart Autoplay" button after the autoplay sequence ends. Selecting this option initiates a new set of wagers only if sufficient funds remain, as evidenced by the balance deduction upon re-start.



*See* Hollywood Casino Mobile App

84.    On information and belief, Hollywood Casino directly infringed at least claim 1 of the '397 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Hollywood Casino Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Hollywood Casino System.

85.    On information and belief, at least since its receipt of the December 2024 Letter on or about December 4, 2024, and its knowledge of the '397 patent, Hollywood Casino knowingly encouraged customers to directly infringe one or more claims of the '397 patent, including but not limited to claim 9, through Hollywood Casino's actions that include, without limitation, specifically instructing and actively encouraging customers to use the Hollywood Casino Products and Services and Hollywood Casino System through its advertisements, promotional materials and user instructions.

86.    On information and belief, Hollywood Casino's advertisements, promotional materials and user instructions, instruct and actively encourage customers of Hollywood Casino to practice each and every element of, at least, the methods of claim 9 of the '397 patent.

87.    On information and belief, at least since its 2024 receipt of the December 2024 Letter, Hollywood Casino induced customers to take constituted direct patent infringement and Hollywood Casino's encouraging acts resulted in direct infringement by its customers.

88.    On information and belief, Hollywood Casino instructed and instructs customers to use the Hollywood Casino Products and Services and Hollywood Casino System, without limitation, through Hollywood Casino's website, which provides access to, and support for using Hollywood Casino Products and Services and Hollywood Casino System.

89.    On information and belief, Hollywood Casino's customers directly infringed at least claim 9 of the '397 patent through their use of the Hollywood Casino Products and Services and the Hollywood Casino System.

90.    On information and belief, Hollywood Casino is in violation of 35 U.S.C. § 271(b) and has indirectly infringed at least claim 1 of the '397 patent by knowingly and specifically having intended to induce infringement by others (including, without limitation, Hollywood Casino's customers) and possessing specific intent to encourage infringement by Hollywood Casino's customers. The Hollywood Casino Products and Services and Hollywood Casino System are and were specifically configured to function in accordance with the '397 patent claims, are material parts of the invention, and do not have substantial non-infringing uses.

91.    Single Action has been damaged by the direct and/or indirect infringement of Hollywood Casino and has suffered irreparable harm and damages as a result of this infringement.

## **JURY DEMANDED**

92.     Pursuant to Federal Rule of Civil Procedure 38(b), Single Action hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

Single Action Bet Tech LLC respectfully requests this Court to enter judgment in its favor and against Defendants as follows:

a.   finding that Hollywood Casino has infringed one or more claims of the '345 patent under 35 U.S.C. §§ 271(a) and (b);

b.   finding that Hollywood Casino has infringed one or more claims of the '397 patent under 35 U.S.C. §§ 271(a) and (b);

c.   awarding Single Action damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

d.   awarding Single Action pre-judgment and post-judgment interest on the damages award and costs;

e.   declaring that Hollywood Casino has willfully infringed one or more claims of the Patents-in-Suit;

f.   awarding treble damages pursuant to U.S.C. § 284 as a result of Hollywood Casino's willful conduct in relation to one or more claims of the Patent-in-Suit;

g.   awarding cost of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and,

h.   awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: December 12, 2025                    Respectfully submitted,

                                            By: */s/ Shalu Maheshwari*_____
                                            Shalu Maheshwari (NJ Bar No. 001822004)
                                            Oded Burger (*pro hac vice* to be filed)*
                                            smaheshwari@daignaultiyer.com
                                            oburger@daignaultiyer.com
                                            DAIGNAULT IYER LLP
                                            8229 Boone Boulevard - Suite 450
                                            Vienna, VA 22182

                                            *Not admitted in Virginia*

                                            *Attorneys for Single Action Bet Tech LLC*